opinion heard before the full bench. Enjoining the governor of a state in the federal courts, Murdock v. Woodson [Case No. 9,942]. Indictment of governor, U. S. v. Clayton [Case No. 14,814].

Enforcement Act — Mode of Administration. As part of the judicial history of the circuit, it may be of interest to the profession to be appraised of the manner in which the anomalous and delicate duties required of the judges of the federal courts by the act of Congress, entitled "An act to amend an act approved May 31, 1870, entitled 'An act to enforce the right of citizens of the United States to vote in the several states of this Union, and for other purposes,'" approved Feb. 28, 1871, and the first section of the act approved June 10, 1872, amendatory thereof, have been performed. This will appear by the following statement: In July, 1872, various applications from the state of Arkansas having been made to the circuit judge, in conformity with the act of congress providing for the appointment and defining the duties of "supervisors of elections," in which applications the petitioners stated their desire to have the registration and succeeding election guarded and scrutinized (the said election being one at which representatives in congress were to be voted for), the circuit judge, under the amendatory act, approved June 10, 1872, made and transmitted to the clerk of the circuit court for the Eastern district of Arkansas, the following designation and appointment: "United States of America, Eighth Judicial Circuit, ss. Being unable, by reason of distance, and from other causes to perform and discharge the duties within the state of Arkansas, imposed by 'An act to enforce the rights of the citizens of the United States to vote in the several states of this Union, and for other purposes,' and acts to amend the same, I do hereby select and appoint in my place and stead to act for and within the said state of Arkansas, the Hon. Henry C. Caldwell and the Hon. William Story, who are respectively the judges of the district courts of the United States for the Eastern and Western districts of Arkansas; and if one of the said judges shall be absent from the state, or unable to act, then the appointment shall be to the other solely, and severally, and I do hereby direct and assign to them, or to either of them, as aforesaid, within and for the state of Arkansas, the performance of all duties, and acts, and the exercise of all powers, functions, and jurisdiction, by the aforesaid acts of congress imposed and conferred upon me. Given under my hand at chambers, in the city of Davenport, this, the 6th day of August, A. D. 1872. John F. Dillon, Circuit Judge, Eighth Judicial Circuit." On the tenth day of August, 1872, court was opened at Little Rock, and the foregoing appointment entered of record, and the said judges notified thereof. An order was made of record that the court remain open from day to day for the performance of the duties imposed and the exercise of the powers conferred by the said acts of congress. On the thirteenth day of August, 1872, the following letter was addressed to the chairman of the Republican and Democratic State Central Committees, respectively, both of whom,—among many others, —had asked the benefit of the said acts of congress:—"Little Rock, Arkansas. Sir: I am directed by the judges to advise you that in pursuance of the act of congress and the order and appointment of the circuit judge, the circuit court of the United States is now open in this city, and will remain open for the purpose of appointing supervisors of election for the various election precincts of this state under the act of congress providing for the same. When this jurisdiction is invoked by proper petitions, the act provides for the appointment of two supervisors of election for each precinct, who can read and write the English language, and who are of different politics, and qualified voters of the precinct. I am also directed by the judges

to say, that owing to their limited personal knowledge of men and their politics, in the various parts of the state, they will be unable to select, upon their own knowledge, proper persons, having the required qualifications to act as such supervisors. In view of this fact, and inasmuch as the act of congress provides that the supervisors of each precinct shall be opposed in politics, the judges have determined to devolve on the Democratic and Republican State Central Committees, respectively, the responsibility of recommending one of the supervisors for each precinct. The persons so recommended by your committee will be appointed by the court, unless it be shown that they do not possess the qualifications required by the act, or are otherwise unfit for the position, and in such case your committee will be notified and requested to recommend some other suitable person. This practice will insure each party a representative of its choice upon the board. The court trusts that your committee will recommend men for the appointment of supervisors whose standing and character will be a guarantee that they will honestly discharge the duties imposed on them by the act of congress. Very respectfully, Ralph L. Goodrich, Deputy Clerk U. S. Circuit Court." Recommendations were made accordingly, and the persons recommended were appointed unless known or shown to be unfit for the duty, and persons in each election district or voting precinct thus appointed received a commission, under the seal of the circuit court, by which "they and each of them were authorized and empowered jointly and severally, to exercise and discharge all and singular the rights, powers, and duties conferred on 'supervisors of election' by the first section of the act of congress aforesaid, approved June 10, 1872." It may, perhaps, properly be added that no complaints reached the court or its judges, of the course adopted, but on the contrary, they had many evidences that their action was universally satisfactory to the citizens of the state.

---

## Case No. 6,138.

### HARRISON v. HADLEY et al.

[See Case No. 6,137.]

---

HARRISON (McCALL v.).   See Case No. 8,-671.

---

## Case No. 6,139.

### HARRISON v. McLAREN.

[10 N. B. R. (1874) 244.] [1]

District Court, S. D. Mississippi.

BANKRUPTCY — PROOF OF DEBT — PREFERENCE — SHIPMENTS BEFORE BANKRUPTCY BUT AFTER INSOLVENCY.

1. A. & Co. had been for a number of years the commission merchants of the bankrupts, who were merchants, dealing mainly in cotton. They advanced a large sum of money to the bankrupts, supposing that they had advanced the entire cash capital required by the bankrupts, and expected in return to receive all the cotton shipped by them. Notes of the bankrupts were presented for payment at the office of A. & Co., and were protested for nonpayment. A short time after this, one of the bankrupts visited A. & Co., and informed them that they were hard pressed, that they owed a large debt besides that due to A. & Co., and requested aid in arranging it. A. then went to the place of residence of the bankrupts and obtained a judgment for the amount due his firm, with the intention thus to receive the entire estate for

1 [Reprinted by permission.]